IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL M. DIAZ and All Others Similarly Situated, | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-13-1242 |
| FELIPE SANDOVAL CASTRO d/b/a CASTRO CONTRACTORS, | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, to recover unpaid overtime wages and compensation for hours worked but not recorded or paid ("off-the-clock"), liquidated damages, attorney's fees, costs, and post-judgment interest,[1] are the following motions: (1) Plaintiff Daniel M. Diaz's ("Diaz's") motion for conditional class certification (instrument #12); (2) Plaintiff's motion to strike Defendant Felipe Sandoval Castro d/b/a Castro Contractor's ("Castro's") good faith defense (#15); and (3) Castro's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (#18).

Because the last motion addresses the threshold issue of the Court's subject matter jurisdiction, which the Court must have to entertain the other motions, the Court reviews it first.

---

[1] Diaz seeks such recovery for himself and on behalf of similarly situated current and former employees of any of the facilities owned by Defendants in Texas who opt into this action.

**Castro's Motion to Dismiss under Rule 12(b)(1) (#18)**

**A. Federal Rule of Civil Procedure 12(b)(1)**

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party seeking to invoke federal jurisdiction, here Diaz, bears the burden of establishing subject matter jurisdiction for the 12(b)(1) motion. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011

WL 52525 at *3, *citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of subject matter jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id*. The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), *citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). In resolving a factual attack on subject matter jurisdiction under Rule

12(b)(1), the district court, which does not address the merits of the suit,[2] has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Because both Diaz and Castro have submitted evidence with their briefs, this is a factual 12(b)(1) attack.

**Mootness Doctrine and Jurisdiction**

Article III of the United States Constitution mandates that federal courts may only adjudicate "cases" or

---

[2] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

> It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [ *Williamson v. Tucker*, 645 F.2d 404, 413 (5 th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id.* To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

"controversies," which must exist at all stages of a litigation. U.S. CONST. art. III, § 2. Without an actual case or controversy, a federal court has no subject matter jurisdiction. *Genesis Healthcare Corp. v. Symczk*, 133 S. Ct. 1523, 1528 (2013); *Lewis v. Continental Bank Corp.* , 494 U.S. 472, 477 (1990); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). For purposes of Article III, a matter becomes moot if the issues raised are no longer live or if the plaintiff lacks a legally cognizable interest in the outcome. *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2012); *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013); *Genesis*, 133 S. Ct. at 1528. A case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees*, 132 S. Ct. 2277, 2287 (2012). If an event occurs that deprives the plaintiff of a personal stake in the outcome of the case or makes it impossible for a court to grant effectual relief to it, the case must be dismissed as moot. *Genesis*, 133 S. Ct. at 1528; *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 921 n.5 (5th Cir. 2008).

In the Fifth Circuit the mootness doctrine generally applies to FLSA collective action overtime cases when, before other employees opt into the suit, the defendant offers the plaintiff the full relief sought, even if he rejects it. *Sandoz*, 553 F.3d at 915[3]; *Rollins v. Sys. Integration, Inc.*, No. 4:05-CV-

---

[3] In *Genesis*, the majority of the Supreme Court opined, "While we do not resolve the question whether a Rule 68 offer that fully satisfies the plaintiff's claims is sufficient by itself to moot the action, . . . we note that Courts of Appeals on both

408, 2006 WL 3486781, at *1, 4 (N.D. Tex. Dec. 4, 2006) If the Offer of Judgment does not compensate the plaintiff for all reasonable statutory damages, it is inadequate and will not moot the plaintiff's claims. To determine if the case is mooted by a Rule 68 Offer of Judgment, the Court thus must determine if the offer provides complete relief to the plaintiff. *Mabary v. Hometown Bank, N.A.*, 276 F.R.D. 196, 201 (S.D. Tex. 2011)

**C. The FLSA**

The FLSA mandates that employers pay overtime compensation for nonexempt employees.[4] *Rainey v. McWane, Inc.*, 314 Fed. Appx. 693, 694 (5th Cir. Mar. 12, 2009), citing 29 U.S.C. § 207(a). The FLSA, 29 U.S.C. § 207(a)(1), generally requires an employer to pay employees who work more than forty hours per seven-day work week at a rate for the overtime not less than one

sides of that issue have recognized that a plaintiff's claim may be satisfied even without the plaintiff's consent." 133 S. Ct. at 1529 n.4. This Court is bound by the Fifth Circuit's ruling in *Sandoz*, cited *supra*.

[4] Section 207(a) does not apply to those "employed in bona fide executive, administrative, or professional capacity." *Rainey*, 314 Fed. Appx. at 694-5, citing 29 U.S.C. § 213(a)(1). Exemption is narrowly construed against the employer, and the employer bears the burden of demonstrating that an employee is exempt. *Tyler v. Union Oil Co. of Cal.* , 304 F.3d 379, 402 (5th Cir. 2002), *citing Dalheim v. KDFW-TV* , 918 F.2d 1220, 1224 (5th Cir. 1990). Whether an employee is exempt or not exempt under FLSA is mainly a fact issue determined by his salary and duties and applications of the factors in 29 C.F.R. § 541.200(a), but the ultimate decision is a question of law. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir. 2000); *McKee v. CBF Corp.*, 299 Fed. Appx. 426, 429 (5th Cir. Nov. 17, 2008). For discussion of exemptions *see, e.g.*, *Thibodeaux*, 328 F.3d 742; *Vela*, 276 F.3d 659. There is no dispute in the instant case that Diaz was a nonexempt employee.

and one-half times the employee's regular rate. *Allen v. Coil Tubing Servs., LLC,* Civ. A. No. H-08-3370, 2011 WL 4916003, *5 (S.D. Tex. Oct. 17, 2011); *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001); *Thibodeaux v. Executive Jet Intern., Inc.*, 328 F.3d 742, 749 (5th Cir. 2003). Under 29 U.S.C. § 216(b), an employer who violates the FLSA shall be liable for "unpaid overtime compensation . . . and an additional equal amount as liquidated damages."[5] Thus an employer who violates the FLSA is liable for liquidated damages equal to the unpaid overtime unless the court finds that the employer acted in good faith and had reasonable grounds to believe that his actions complied with the statute and therefore declines to award or reduces the amount of the liquidated damages. *Stokes v. BWXT Pantex, LLC*, 424 Fed. Appx. 324, 326 (5th Cir. May 4, 2011), citing 29 U.S.C. § 260. The employer bears the burden of demonstrating that it acted in good faith to escape mandatory liquidated damages under the statute. *Perez*, 2011 WL 2672431, at *9, *citing Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003), and *Stokes v. BWXT Pantex, LLC*, 424 Fed. Appx. at 326.

Title 29 U.S.C. § 211(c) requires that the employer "make, keep and preserve such records of the persons employed by

---

[5] 29 U.S.C. 216(b). Once a liquidated damages assessment was required, but now the court had the discretion to deny such an award if the employer acted in good faith and had reasonable grounds to believe that it had complied with the FLSA. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003), *citing Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998).

him and of the wages, hours, and other conditions of employment maintained by him." The United States Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), *superceded on other grounds by the Portal-To-Portal Act*. 29 U.S.C. § 251, *et sq.*),set the standard of proof for any employee suing under § 16(b) of the FLSA "for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages" to satisfy his burden of proof that "he performed work for which he was not properly compensated." 328 U.S. at 686-87. It held,

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises, The solution is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.*

As stated by the Supreme Court, "The remedial nature of this statute and the great public policy which it embodies . . . militate against making [the plaintiff's burden] an impossible hurdle for the employee." *Anderson*, 328 U.S. at 687. It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment; the employer is in a superior position to know and produce most probative facts concerning the nature and amount of work performed and "[e]mployees seldom keep such records themselves." *Id.* Therefore if the employer fails to keep proper and accurate records and "the employee cannot offer convincing substitutes,"

> [t]he solution is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88.

"'It is . . . a fundamental precept of the FLSA that an employee should not be denied [recovery] because proof of the number of hours worked is inexact or not perfectly accurate.'"). *Perez*, 2011 WL 2672431, *9, *quoting Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 989 (W.D. Tenn. 2011). "A plaintiff need not 'prove each hour of overtime with unerring accuracy or certainty.'" *Prince*, 2009 WL 2170042, *6. "In the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Id., quoting Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, *3 (S.D.N.Y. Jan. 30, 2009)(finding plaintiffs' initial burden was satisfied by affidavits based on the plaintiffs' recollection describing the time spent performing various tasks for which they did not receive overtime compensation). Evidence can include plaintiff's testimony as to when and how many overtime hours he worked, plaintiff's affidavit to such, etc. *Prince*, 2009 WL 2170042, at *6.

**C. Castro's Motion to Dismiss**

Castro asserts that on October 15, 2013, pursuant to Federal Rule of Civil Procedure 68, [6] Castro made an Offer of

---

[6] Rule 68, "Offer of Judgment," provides in relevant part,

> **(a) Making an Offer; Judgment on an Accepted Offer.** At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the

Judgment (#18-2) for $3,000.00 to Diaz that provided complete relief for any and all of his alleged damages, fees, and costs, plus additional money.[7] In a footnote (#18, p.2, n.2), Castro asserts,

> In calculating the offer amount, and solely for that purpose, Defendant made every assumption in Diaz's favor. The undisputed time records (Exhibit B) show the hours worked in each work week by Diaz, the pay rate, and that Diaz was paid for the hours worked. The only dispute in this case is whether or not Diaz was entitled to "overtime pay," i.e., time and a half for hours worked in excess of 40 hours per week. Regardless, in the Offer, Defendant gave Diaz credit for full (double) liquidated damages under the FLSA. Within these parameters and based on Diaz's time records, Defendant calculated his

---

> costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.
>
> **(b) Unaccepted Offer.** An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.
>
> . . . .
>
> **(d) Paying Costs After an Unaccepted Offer.** If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

[7] In addition to the $3,000.00, the Offer of Judgment (#18-2) states that Defendant will pay "costs accrued to date" and "reasonable and necessary attorney fees as determined by the court." An employer who violates the FLSA must pay attorney's fees. *Black v. SettlePou, PC*, 732 F.2d 492, 502 (5th Dir. 2012), *citing* 29 U.S.C. § 216(b).

> maximum possible recovery in this litigation to be $771. This amount doubled (liquidated damages under the FLSA) is $1,542.00). *See* Exhibit C (Summary of hours if overtime pay is required).

He attaches his own affidavit that states that the paystubs attached as Exhibit B "are true and correct copies" of all the paystubs for Diaz during his employment from April 23, 2012 to February 24, 2013 and that they accurately reflect the hours he worked, his rate of pay, the total amounts paid for him, and other information for each weekly pay period. Castro further points out that Exhibit A to Diaz's motion for conditional class certification is a declaration by Diaz that "he got paid regular pay," but "not any extra pay (overtime) . . . ." Exhibit B to that motion for conditional certification is composed of a number of Diaz's pay stubs, which are not in dispute. Diaz had fourteen days to respond to the Offer of Judgment under Rule 68(a) but did not.

On October 21, 2013, Diaz filed his motion to certify conditional class (#12), thereby implicitly rejecting the Offer of Judgment. Castro argues that the rejection of its Offer of Judgment to pay the full amount of Diaz's potential recovery and more moots Diaz's claim because Diaz has no remaining personal stake or legally cognizable interest in the resolution of this case, and it renders the Court without subject matter jurisdiction.[8] *See Jones v. SuperMedia, Inc.*, 281 F.R.D. 282,

---

[8] Counsel's affidavit (#18-1) further states that he did not receive a notice of acceptance of the Offer from Plaintiff or

286 (N.D. Tex. 2012)("Under Rule 68, an offer of complete relief will generally moot the plaintiff's claim because the plaintiff no longer has a personal interest in the outcome of the litigation."), *citing Sandoz*, 553 F.3d at 921 n.5.; *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003)("'[W]hen claims of named plaintiffs become moot before class certification, dismissal of the action is required.'"), *quoting Lusardi v. Xerox Corp.*, 975 F.2d 964, 976 (3d Cir. 1992).

**Diaz's Response (#24)**

Diaz states that he rejected Castro's Offer of Judgment because the amount offered failed to adequately compensate Plaintiff for his unpaid and unrecorded work "off-the-clock." He maintains that Castro submits pay stubs, but no time records, to support his contentions. Diaz claims that he routinely worked nine to eleven hours per workday, but that Castro failed to maintain a complete, accurate, and contemporaneous record of the hours worked by Diaz and others similarly situated. Castro assigned his brother, Jose, to report the hours each employee worked. Diaz claims he complained about the arbitrary and inaccurate time amounts reported by the brother and argues that the pay stubs are therefore not reliable as a reflection of actual hours that were worked. He attaches declarations, which are identical except for the name of the declarant, from himself and

his attorney during the fourteen days following the transmission of the Offer of Judgment.

two other employees,[9] alleging a similar pay practice. Exs. A, B, and C (claiming that they worked up to 20 hours overtime a week and complained to Castro about his brother's inaccurate reporting of the hours, to no avail). Diaz claims that Castro has offered no evidence to show that it kept complete, accurate and contemporaneous records, so his motion to dismiss must be denied.

Diaz objects that the Offer of Judgment did not moot this action because it did not provide full relief: it did not include the prejudgment interest or punitive damages that Diaz was seeking, nor did it compensate Diaz for the potential incentive award he could receive if a class is certified.[10] On its face, the Offer does not cover any "off-the-clock" hours claimed by Diaz. Moreover he objects that Castro also ignores the declarations of Diaz, Chavez, and Budel that they worked up to 20 hours of overtime a week.

Diaz further emphasizes that in the case law cited by Castro, no person had filed a consent to join the FLSA lawsuit and no individual had indicated an intent to do so; such a failure is

---

[9] The two co-workers are Nelson Chavez ("Chavez"), who opted in on November 5, 2013 (#22), and Cesar Budel ("Budel"), who opted in on November 8, 2012 (#23). The Offer of Judgment was dated October 15, 2013.

[10] Diaz cites *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 875 (7th Cir. 2012)(appealing a decertification of a class), but the Court finds that case is not apposite. In *Espenscheid*, a class had already been certified and a settlement agreement had given the individual employees an incentive reward for their services as class representatives, contingent upon class certification, which gave the individual employees a tangible financial stake in appealing decertification.

a major factor in determining whether a Rule 68 Offer of Judgment can moot an FLSA cause of action. He argues that where additional plaintiffs have opted into the case, as is the case here with Chavez and Budel, an Offer of Judgment does not moot the case. *Bah v. Shoe Mania, Inc.*, No. 08 Civ. 9380(LTS)(AJP), 2009 WL 1357223, at *2 (S.D.N.Y. May 13, 2009)(Where "Plaintiff filed his motion for an order directing Defendants to turn over contact information of its employees and authorizing the issuance of an opt-in notice to potential plaintiffs [i.e., motion for conditional certification] only a few months after the complaint was filed, and an additional plaintiff has already opted in . . . [u]nder these circumstances this action is not mooted by Defendants' offer of judgment which only purports to cover Plaintiff's claims."), *citing Yeboah v. Central Parking Sys.*, No. 06 Civ. 0128(RJD)(JMA), 2007 WL 3232509, at *4-5 (E.D.N.Y. Nov. 1, 2007)(after a motion to dismiss was filed, but before the Court ruled on it, the Court concluded that the presence of just one opt-in plaintiff "requires the conclusion that even if defendant's Rule 68 offer represented or exceeded plaintiff's maximum recovery, it neither mooted plaintiff's FLSA claim nor deprived this Court of subject matter jurisdiction over this matter"), *citing Rubery v. Buth-Na-Bodhaige, Inc.*, 494 F. Supp. 2d 178, 180 (W.D.N.Y. 2007)("[D]ismissal on mootness grounds is not appropriate where the offer fails to satisfy 'all damages for all plaintiffs,' such as where the amount owed to the plaintiff is in dispute, or where additional plaintiffs have opted in and not been

extended offers of judgment.”). *In accord, Ward v. Bank of New York*, 455 F. Supp. 2d 262, 267-68 (S.D.N.Y. 2006)(“‘[C]ourts are wary of attempts by defendants to evade FLSA collective actions by making Rule 68 offers of judgment’ at the earliest possible times.”). Diaz highlights the fact that here two individuals have filed opt-in consent forms with the Court. *Cf. Genesis*, 133 S. Ct. 1523 (Justice Thomas acknowledges that the facts that no other person filed a consent to join and the plaintiff failed to challenge the sufficiency of the offer triggered the analysis to determine whether the Offer of Judgment was mooted.).[11]

[11] Nevertheless this Court is bound by the law in the Fifth Circuit, not that in the Second Circuit, and by its subsequent development. In *Sandoz*, the defendant, Cingular, made its offer of judgment to Sandoz before any other individuals opted into the suit. 553 F.3d at 914. When Cingular moved to dismiss for lack of subject matter jurisdiction, the district court denied the motion, and the Fifth Circuit agreed to hear an interlocutory appeal. *Id.* The panel identified the issue as “whether a FLSA claim becomes moot when the purported representative of a collective action receives an offer that would satisfy his or her individual claim and no other plaintiffs have opted in to the collective action.” *Id.* at 915. Distinguishing the analysis under § 216(b) from that for a Rule 23 class action, the panel held, “[T]he language of § 216(b) and the case construing that provision demonstrate that Sandoz cannot represent other employees until they affirmatively opt in to the collective action. This means that when Cingular made its offer of judgment, Sandoz represented only herself, and the offer of judgment fully satisfied her individual claims.” *Id.* at 919. Concerned that defendants could easily “pick off” plaintiffs trying to bring collective actions under this rule, and thus be contrary to policies behind the FLSA, the panel found a way around the problem by relying on two Rule 23 class action suits, *Sosna v. Iowa*, 419 U.S. 393 (1975), and *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980), and by holding that “when a FLSA plaintiff files a timely motion for certification of a collective action, that motion relates back to the date the plaintiff filed the initial complaint, particularly when one of the defendant’s first actions is to make a Rule 68 offer of judgment.” *Id.* at 920-21. “[I]f the court ultimately grants the motion to certify, then the Rule

68 offer to the individual plaintiff would not fully satisfy the claims of everyone in the collective action; if the court denies the motion to certify, then the Rule 68 offer of judgment renders the individual plaintiff's claims moot." *Id.* This ruling would have applied here except for subsequent decision in *Genesis*. *See Silva v. Tegrity Personnel Services, Inc.*, 986 F. Supp. 2d 826, 831-38 (S.D. Tex. 2013).

In *Genesis*, Symczyk filed a collective action on behalf of herself and similarly situated employers against a Philadelphia healthcare facility. 133 S.C. at 1527. The defendant answered and filed a motion to dismiss for lack of subject matter jurisdiction, arguing that since no other employees had yet joined the suit, Symczyk no longer had a personal stake in the outcome of the action and therefore the case was mooted. *Id.* The district court agreed and granted the motion and dismissed the case. On appeal, the Third Circuit concluded that the collective action was not moot, and, like the Fifth Circuit in *Sandoz*, concerned that "calculated attempts by some defendants to 'pick off' named plaintiffs with strategic Rule 68 offers before certification could short circuit the process, and, thereby, frustrate the goals of collective actions," reversed and remanded the action for Symczyk to pursue conditional class certification. *Id.*; *Silva*, 986 F. Supp. 2d at 832-33. On appeal, the majority of the Supreme Court (in a 5-4 decision) expressly stated, "While we do not resolve the issue whether a Rule 68 offer that fully satisfies the plaintiff's claim is sufficient by itself to moot the action, we note that Courts of Appeals disagree . . . ." *Genesis*, 133 S. Ct. at 529 n.4; *Silva*, 986 F. Supp. 2d at 833. The high court's majority highlighted the fact that while certification of a class under Rule 23 results in the putative class's acquiring independent legal status, conditional certification of a collective action results only in the sending of court-approved notice to employees and no independent legal status. *Genesis*, 133 S. Ct. at 1530 (thus demonstrating that neither *Sosna* or *Geraghty* was relevant to the issue). The majority also rejected Symczyk's reliance on "cases invoking the 'inherently transitory' relation-back" reasoning because the statutory damages are not inherently transitory. *Id.* at 1531; *Silva*, 986 F. Supp. 2d at 834. It held that Symczyk "has no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness." *Id.* at 1532; *id.* Thus that part of *Sandoz* that survives *Genesis* and remains controlling in the Fifth Circuit is that a FLSA plaintiff cannot represent other employees until they affirmatively opt into the collective action and therefore at the time the offer of judgment was made Sandoz represented only herself, and "the offer of judgment fully satisfied her individual claims." *Id.* at 919; *id.*

**Castro's Reply (#25)**

Castro, emphasizing that Diaz bears the burden of showing that subject matter jurisdiction exists, argues that Diaz "relies on three objectionable declarations, which (in a cut/paste verbatim fashion) allege vaguely that [declarants] were 'not paid correctly,'" and which Castro maintains fail to meet Diaz's burden of proof for several reasons. #25 at pp. 2-3.

First, Federal Rule of Civil Procedure 37(c) provides in relevant part, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Castro asserts that Diaz has failed to disclose information relating to damages, i.e., the hours which he claims he was not paid or underpaid. Thus Diaz should be precluded from trying to offer evidence on them now. Thus the only evidence of damages is that attached to Castro's motion, which affirmatively shows that the Offer of Judgment more than satisfied Diaz's claim. Castro notes that Diaz never explains why the $3,000 offer was inadequate but only vaguely and conclusorily asserts that it was.

Second, Diaz attached a declaration by himself as Exhibit A to his motion for conditional class certification (#12-1). It states, "But I only got paid regular pay and not any extra pay (overtime) for the work I performed in excess of 40 hours in a workweek." He further declares, "I know that the workers

classified as Laborers were treated in the same way because we all got the same--only regular pay--not extra pay (overtime)." Yet in his current motion to dismiss he has changed his story and claimed he was not paid regular pay or overtime pay, contradicting his own prior testimony with no explanation.

In addition, Diaz attached, as Exhibit B to his motion for conditional certification, copies of some of his pay stubs (#12-2), yet he now claims that they "do not represent the amount of hours I worked each day" for Castro, even though Diaz relies on them for the Court to grant his motion for conditional class certification. Castro urges that Diaz should be estopped from taking such contrary positions with regard to the same paystub documents.

Both these contradictions between his earlier testimony and his current claims are solely for the purpose of defeating Castro's motion to dismiss and should not be relied on by the Court, insists Castro.

Castro also objects that Chavez's and Budel's declarations are unreliable hearsay[12] and irrelevant to the question of Diaz's damages, and Castro moves to strike them because neither employee can testify as to what the damages Diaz is seeking actually are. Indeed, given his disclosures and prior

---

[12] Both declarants state, "When I complained [that Castro's brother "was not reporting all of the hours that I worked nearly every week"], Jose Castro said I had to talk to Felipe Sandoval Castro and that he couldn't do anything about it."

declarations, Diaz cannot properly testify as to what his own damages are.[13]

Castro emphasizes that he has submitted a sworn affidavit, detailed paystubs for each check written to Diaz during his employment, some of which were relied upon by Diaz in prior filings, and which Castro states accurately reflect the hours worked by Diaz in each given week and allow the court to determine the amount of "overtime pay" Diaz would be entitled to if he were protected by the FLSA.

Castro maintains that Diaz's declaration lacks adequate facts to meet his burden of proof. Now claiming that he is owed unpaid wages, but failing to provide any figures or claim any specific amounts that would permit the Court to decide that the proposed $3000.00 would not cover all of Diaz's claim, even if his altered testimony is assumed to be truthful. Castro insists that the offer is more than three times what the only credible evidence shows that Diaz could ever claim in extra overtime pay ($771.00), so even if the Court adds now allegedly unpaid regular hours, the offer would still cover Diaz's whole claim.

**Diaz's Sur-Reply (#26)**

Diaz's sur-reply was impermissibly filed without leave of the Court. In essence, quoting from *Reeves v. Int'l Tel. and Tel. Corp.*, 616 F.2d 1342, 1352 (5th Cir. 1980), *cert. denied*, 499

[13] The Court observes that the fact that the wording of Dias, Chavez, and Budel's affidavits is identical supports Castro's argument that they are not based on personal knowledge of their own individual hours, no less on those of their co-workers.

U.S. 1077 (1981), Diaz sums up his argument, "Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a 'sufficient basis' for damages."

**Court's Decision**

As noted earlier, Diaz characterizes Castro's proffer of Diaz's paystubs for the entire period that Diaz worked for Castro as "unsubstantiated." The Court disagrees. It finds that the paystubs appear to provide the information required by the statute. Castro has submitted his sworn affidavit that the records he produces "are true and correct copies of the paystubs for Mr. Diaz" during the entire period of his employment. #18-3. Moreover he avers that the "paystubs accurately reflect the hours he worked, his rate of pay, the total amounts paid to him, among other information for each respective pay period" (*id.*); the Court observes that these records on their face appear to satisfy the requirements established in *Anderson*.

Diaz, however, asserts that Castro's brother, Jose Castro, did not accurately portray the hours that Diaz and similarly situated employees worked. His only evidence is the declarations of himself, Chavez, and Budel (#24, Exs. A, B, and C), which identically state, "I would complain to Jose Castro that he was not reporting all of the hours that I worked nearly every week. . . . I know there were many weeks where my hours were underreported by Jose Castro." These vague, conclusory statements, unsupported by any facts, are not competent evidence.

Moreover the fact that all three affidavits are identical despite being from three different workers with no showing of the nature of their work, where and when they were performing, since Diaz's proposed class includes workers at facilities all across Texas, undermines the veracity and reliability of their affidavits.
*Id.* at 687-88.

With regard to Diaz's complaint that the offer did not include prejudgment interest under FLSA, the Fifth Circuit follows the Seventh Circuit's approach in Age Discrimination in Employment Act ("ADEA") cases,[14] *e.g.*, *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1336 (7th Cir. 1987), *vacated on other grounds*, 486 U.S. 1020 (1988). In ADEA cases, if the court awards liquidated damages, it may not award prejudgment interest on either back pay or on the liquidated damage award. *McCann v. Texas City Refining, Inc.*, 984 F.2d 667 (5th Cir. 1993), *clarifying its ruling in Burns v. Texas City Refining, Inc.*, 890 F.2d 747 (5th Cir. 1989). Diaz has asked for liquidated damages, so his contention that the Offer

---

[14] The ADEA's remedial provisions were modeled on those of the FLSA. *Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1471 (5th Cir. 1989), *citing* H.R. Rep. No., 90th Cong. 1st Sess. (1967), *reprinted in* 1967 U.S. Code Cong. & Admin. News 2213, 2218. The Fifth Circuit has ruled that remedies provisions under the FLSA and the ADEA must be interpreted to be consistent. *Douglas v. Mission Chevrolet*, 757 F. Supp. 2d 637, 639 (W.D. Tex. 2010), *citing Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006)("Because remedies under the ADEA and the [Family and Medical Leave Act] both track the FLSA, cases interpreting remedies under the statutes should be consistent."), and *Johnson v. Martin*, 473 F.3d 220, 222 (5th Cir. 2006)(*per curiam*)(""The FLSA and ADEA have the same remedies provisions, so this ADEA precedent applies to the present case.").

of Judgment also did not include prejudgment interest is without merit.

Diaz also complains that the Offer of Judgment did not include punitive damages. Punitive damages are not available under the FLSA in excess of permitted liquidated damages. *Little v. Technical Specialty Products, LLC*, 940 F. Supp. 460, 479-80 (E.D. Tex. 2013). *See also Douglas v. Mission Chevrolet*, 757 F. Supp. 2d 637, 640 (W.D. Tex. 2010)(holding that punitive damages are not recoverable under the ADEA and remedies under the ADEA and the FLSA must be interpreted consistently).

Where an affidavit or declaration contradicts without explanation a party's sworn deposition testimony, "[i]t is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.") *S.W.S. Erectors, Inc. v. Infax, Inc,*, 72 F.3d 489, 495 (5th Cir. 1996). *See also Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999)(recognizing that federal courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting . . . her own previous sworn testimony (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."). Thus the Court finds here that Diaz's current claims that contradict his earlier affidavits, without any

explanation, render his evidence incompetent to preclude summary judgment.

Accordingly because he fails to present competent summary judgment evidence, Diaz fails to satisfy his burden of proof that "he has in fact performed work for which he was improperly compensated" and has not presented "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Therefore the Court finds that the Offer of Judgment completely covers Diaz's FLSA claims, which it moots, and thus the Court lacks subject matter jurisdiction over this case. The Court accordingly

ORDERS that Castro's motion for summary judgment is GRANTED. All other pending motions are moot. A final judgment will issue by separate order.

**SIGNED** at Houston, Texas, this 14th day of August, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE